RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0408P (6th Cir.)
File Name: 01a0408p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

JAMES E. KING (00-5271);
JUAN RAMIREZ-MENDOZA
(00-5383),
*Defendants-Appellants.*

Nos. 00-5271/5383

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 98-00109—James H. Jarvis, District Judge.

Argued: June 13, 2001

Decided and Filed: November 27, 2001

Before: MARTIN, Chief Judge; NORRIS, Circuit Judge;
QUIST, District Judge.[*]

---

[*] The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Greeneville, Tennessee, J. Ronnie Greer, Greeneville, Tennessee, for Appellants. David C. Jennings, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Greeneville, Tennessee, J. Ronnie Greer, Greeneville, Tennessee, for Appellants. David C. Jennings, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

———————————

**OPINION**

———————————

ALAN E. NORRIS, Circuit Judge. James King ("King") and Juan Ramirez-Mendoza ("Ramirez-Mendoza") appeal from their convictions and their sentences for drug trafficking and conspiracy. They challenge the sufficiency of the evidence, the use of a tape transcript during closing argument, and their sentences, raising an *Apprendi* challenge to the failure to allege the drug amount and Ramirez-Mendoza's prior conviction as elements of the offense. For the reasons that follow we **affirm** the convictions and sentences of both King and Ramirez-Mendoza.

**I.**

In 1998, the Drug Enforcement Administration ("DEA") and the United States Postal Inspection Service began an investigation of a drug operation that was functioning through the mail. The first suspect identified was David Clark ("Clark") in Tennessee, and by intercepting a cash package from Clark, investigators located Tami Butterfas ("Butterfas"), the recipient, in California. Investigators then intercepted a methamphetamine shipment to Clark, and on

There is no clear error in the district court's finding that King was neither a minimal nor a minor participant when he was knowingly involved with repeated shipments of drugs. *See Owusu*, 199 F.3d at 338 (finding no error in a refusal to grant a mitigating role adjustment when defendant regularly sold drugs, even though he was less culpable than the primary conspirators); *United States v. Saucedo*, 226 F.3d 782, 788 (6th Cir. 2000) (finding no error in a refusal to grant a mitigating role adjustment when defendant was a paid carrier who transported four kilograms of cocaine for a drug cartel), *cert. denied*, *Hernandez v. United States*, 531 U.S. 1102 (2001).

**VI.**

The convictions and sentences of the defendants are **affirmed**.

August 15, 1998, Clark was arrested after picking up the package. He cooperated, and investigators found in his day planner contact information for the two defendants in this case, Ramirez-Mendoza and King.

In September 1998, agents confronted Butterfas, who cooperated and made recorded telephone calls to King and Ramirez-Mendoza. With King and his wife Valerie, Butterfas discussed how to "collaborate" on their stories to authorities about the Kings' post office boxes, the mailing of the packages, and their acquaintance with Clark. In the conversation, Butterfas mentioned that the DEA had visited her, and she asked if King had gotten "rid of" "everybody's" numbers, which King said he would do.

With Ramirez-Mendoza, Butterfas discussed a drug deal, and she protested when he said she had to give him the money first. Ramirez-Mendoza explained the precaution by saying "I know you got trouble, you in trouble with the people . . . with the people you are sending the mail."

After a superseding indictment was returned against eight defendants on September 15, 1998, King and Ramirez-Mendoza were arrested. Five other defendants entered guilty pleas. The jury trial of King and Ramirez-Mendoza, along with a conspirator who was subsequently acquitted, began on August 9, 1999. The government relied principally on the Butterfas tapes and testimony by Butterfas and Clark, who explained how the conspiracy operated. Ramirez-Mendoza supplied methamphetamine to Butterfas, who for the last five or six months before her arrest had King ship it to Clark for distribution in Tennessee and North Carolina. She paid him $400 for each package shipped. The government introduced into evidence several of the packages' labels with King's handwriting. Clark on at least one occasion dealt directly with Ramirez-Mendoza, and according to Butterfas, Clark at least five or six times sent the money directly to King. Eventually Butterfas started giving King the money to purchase the drugs from Ramirez-Mendoza.

King and Ramirez-Mendoza were convicted by a jury on August 13, 1999, of conspiracy to distribute and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841. King was sentenced to 151 months of imprisonment with five years of supervised release. Ramirez-Mendoza was sentenced to 240 months' imprisonment with ten years of supervised release.

## II.

Both King and Ramirez-Mendoza challenge the sufficiency of the evidence underlying their convictions. We review such claims to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994) (internal quotation marks and citations omitted). We do not judge the credibility of witnesses or substitute our judgment for that of the jury. *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996).

To prove a drug conspiracy under 21 U.S.C. § 846, "the government must prove that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." *United States v. Ledezma*, 26 F.3d 636, 640 (6th Cir. 1994) (internal quotation marks and citations omitted).

### a) King

King argues that the evidence is insufficient to support his conviction for conspiracy because the proof does not establish that he knew of the conspiracy or that the packages whose labels he addressed contained drugs (he says he thought they contained equipment parts used in a logging business). He also adopts, in his reply brief, Ramirez-Mendoza's argument that the Butterfas tapes cannot provide evidence of his agreement to join the conspiracy.

"A trier of fact may infer knowledge of and participation in the common purpose and plan of a conspiracy based on

Moreover, it was the undisputed testimony of a forensic chemist that one package contained 82.8 grams of actual methamphetamine, an amount above the 50 gram amount needed to trigger the defendants' sentences under the applicable statutes. *See* 21 U.S.C. § 841(b)(1)(A). We therefore conclude that any errors in sentencing failed to affect the defendants' substantial rights.

## V.

King raises two additional claims which we may deal with briefly. He first contends that his supervised release term of five years is illegal because the maximum term of supervised release that may be imposed under 18 U.S.C. § 3583(b) is three years. King acknowledges that this statute conflicts with 21 U.S.C. § 841, which provides a minimum term of three years of supervised release if the drug quantity is not specified (and there is no prior conviction), 21 U.S.C. § 841(b)(1)(C), and a minimum term of five years if the quantity is 50 grams or more of pure methamphetamine. 21 U.S.C. § 841(b)(1)(A).

In *United States v. Page*, 131 F.3d 1173 (6th Cir. 1997), we considered the two statutory directives on supervised release and affirmed a five-year term of supervised release imposed under § 841, which provided for a minimum of three years, even though § 3583 set the maximum at three years of supervised release. We found that "these specific provisions [of § 841(b)] are excluded from the limits on supervised release provided for in section 3583(b)." *Id.* at 1180; *accord United States v. Pratt*, 239 F.3d 646-48 (4th Cir. 2001). King's argument is thus foreclosed by our decision in *Page*. The district court did not err in sentencing King to five years of supervised release.

King also argues that his offense level should have been reduced based on his role as a minor or minimal participant. We review a district court's denial of a mitigating role adjustment for clear error. *United States v. Owusu*, 199 F.3d 329, 337 (6th Cir. 2000).

through a plea agreement. A similar situation was recently considered by the Seventh Circuit in *United States v. Martinez*, 258 F.3d 582 (7th Cir. 2001). In that case, the defendant was convicted of conspiracy to distribute crack cocaine and distribution of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and was subsequently sentenced to a term of life imprisonment on one count and 240 months' imprisonment on the other, terms dictated by the district court's determination of the drug quantities for which defendant was responsible. *Martinez*, 258 F.3d at 583. Neither the indictment nor the jury instructions specified a drug quantity. The Seventh Circuit rejected defendant's *Apprendi* challenge to his sentence:

> Given the duration and scope of Martinez's organization, the evidence was overwhelming that the amount of crack was far beyond 50 grams. No reasonable jury could conclude that the conspiracy involved under 50 grams of crack. Therefore, because the evidence was more than sufficient to show an amount of crack which would allow for a life sentence, the error did not seriously affect the public integrity, fairness, or reputation of these proceedings, and we will not upset the verdict on plain error review.

*Id.* at 586. Although the Seventh Circuit's decision rested on the fourth prong of plain error review rather than the third, we agree with their assumption that the means by which guilt is determined, whether a plea bargain or guilty verdict, does not affect our plain error review.

Based on our decision in *Stafford* and the Seventh Circuit's decision in *Martinez*, we conclude that the substantial rights of the defendants were not affected by any *Apprendi* error which may have occurred during sentencing. Both defendants failed to object to the drug quantity determinations contained in the PSRs despite being on notice that such determinations would affect the length of their sentences. Indeed, King merely objected that the amount in question was closer to 300 grams of actual methamphetamine rather than one kilogram.

defendant's actions and reactions to the circumstances." *United States v. Barrett*, 933 F.2d 355, 359 (6th Cir. 1991). Clark said he had mailed money to King at least once. Butterfas testified that she would give King the money to meet with Ramirez-Mendoza and purchase methamphetamine. King does not offer an "innocent" explanation for these deals but attempts to discredit the testimony against him by co-conspirators Butterfas and Clark by pointing out that Butterfas and Clark benefitted from a cooperation agreement with the government when they agreed to testify. This argument fails to undermine the sufficiency of the evidence since "[a]ttacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991) (citation omitted). Even where testimony of a cooperating co-conspirator is the principal evidence linking a defendant to the conspiracy, this court has affirmed a conviction against a challenge to the sufficiency of the evidence. *See United States v. Ward*, 190 F.3d 483, 488 (6th Cir. 1999) (affirming a drug conspiracy conviction based on a co-conspirator's "passing reference" to defendant as a distributor).

The Butterfas tapes also reveal King's awareness of a conspiracy. Butterfas in conversation with King says she fears conspiracy charges. In addition, King and his wife and Butterfas discuss what to say about co-conspirator David Clark. King's agreement to delete "everybody's" numbers from his planner is simply incompatible with King's professed ignorance of the conspiracy.

King's claim that he thought the packages only contained logging equipment is equally implausible in light of the tapes, where Butterfas speculates, after mentioning that the DEA visited her, that "they" intercepted packages. King expresses no surprise, and goes on to discuss the packages with Butterfas. The government also introduced evidence that King received $400 each time he mailed a package for Butterfas, an amount inconsistent with King's professed belief in their "innocent" contents. Testimony and tapes

provided ample evidence of King's knowledge of the conspiracy and of the packages' drug contents.

King in his reply brief adopts an argument made by Ramirez-Mendoza, namely, that the taped conversation between him and Butterfas cannot be evidence that he agreed to participate in a conspiracy because Butterfas had become a government informant by the time of the tapes. Although a person acting as a government agent cannot be a coconspirator, "his meetings and conversations with defendants can be evidence of conspiracy among the defendants." *United States v. Esparsen*, 930 F.2d 1461,1472 n.11 (10th Cir. 1991). Circumstantial evidence "that can reasonably be interpreted as participation in the common plan" may be sufficient to show an agreement. *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991) (citation omitted).

The tape, along with testimony by Butterfas and Clark, provided reasonable jurors sufficient evidence to conclude that King had agreed to cooperate with others in the conspiracy.

### b) Ramirez-Mendoza

Ramirez-Mendoza challenges the sufficiency of the evidence of his knowledge of and participation in the charged conspiracy; he suggests that there were separate conspiracies and the government has not proven that he was involved in the Tennessee conspiracy listed in the indictment. He also challenges the sufficiency of the evidence that he entered into a conspiracy agreement.

Ramirez-Mendoza admits that he sold drugs in California, but contends that he never traveled to Tennessee and did not know that Butterfas was sending his drugs to Tennessee. The indictment alleged that the defendants participated in a conspiracy "in the Eastern District of Tennessee and elsewhere" to distribute and to possess methamphetamine. Even if Ramirez-Mendoza did not know that Tennessee was the drugs' final destination, he may still be guilty of the

In the present case, the government notes that Ramirez-Mendoza did not contest the drug quantity determination contained in his PSR; that King objected only that the amount in question was closer to 300 grams than one kilogram of actual methamphetamine; and that the testimony of a forensic chemist that 82.8 grams of actual methamphetamine was found in one intercepted package was undisputed. In the presence of such uncontroverted evidence as to the quantity of drugs involved, the government argues that we should conclude that any *Apprendi* error failed to affect the defendants' substantial rights.

In *Stafford*, defendant was sentenced to 188 months' imprisonment for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Upon appeal, he raised the issue of an *Apprendi* error in sentencing on the grounds that his indictment was silent as to the type or quantity of cocaine. We noted that even if the omission of such information constituted plain error, any error had failed to affect defendant's substantial rights:

> The reasoning of *Pease* and *Duarte* applies with full force here. We already have found that Defendant effectively admitted the types and quantities of cocaine involved in the charged drug offense, both through his own affirmative statements, and by virtue of his failure to challenge the Government's statements at the change-of-plea hearing and in the PSIR. Moreover, as in *Duarte*, Defendant here was repeatedly advised, both in the plea agreement and at the change-of-plea hearing, that a plea of guilty to this drug offense would expose him to a mandatory minimum 10-year term of imprisonment and a maximum term of life imprisonment, and the PSIR further emphasized this point by expressly citing the penalty provision at 21 U.S.C. § 841(b)(1)(A).

*Stafford*, 258 F.3d at 478.

Here, too, the defendants failed to contest the drug quantity determinations contained in their PSRs but, in contrast to *Stafford*, their guilt was determined by the jury rather than

below, we do not believe that King's substantial rights were affected by any error at sentencing.

c)    *Were the substantial rights of the defendants affected by the Apprendi errors?*

Ramirez-Mendoza, in whole, and King, in part, succeed in satisfying the first two elements of plain error analysis: that an error occurred and that it was plain. The remaining question is whether the errors in sentencing affected the substantial rights of King and Ramirez-Mendoza—the third prong of plain error analysis. "This third step is akin to the harmless error analysis employed in preserved error cases, which asks whether a rational jury would have found the defendant guilty absent the error." *United States v. Candelario*, 240 F.3d 1300, 1310 (11th Cir.), *cert. denied*, 121 S. Ct. 2535 (2001). In *Neder v. United States* the Supreme Court held that a failure to instruct the jury on an element of an offense could constitute harmless error if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. 527 U.S. 1, 18 (1999). Applying this reasoning in the context of *Apprendi* errors, some circuits have concluded that a factual finding that *Apprendi* would otherwise require to be determined by the jury beyond a reasonable doubt may be harmless if the court can conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error. *See, e.g., United States v. Duarte*, 246 F.3d 56, 62-64 (1st Cir. 2001) (holding that defendant's substantial rights were not affected by an indictment which lacked any reference to a specific quantity of drugs, where defendant admitted to a quantity of drugs in a plea agreement); *United States v. Pease*, 240 F.3d 938, 943-44 (11th Cir. 2001) (same). In *Stafford* we agreed with the holdings of *Duarte* and *Pease* and concluded that defendant was unable to show that the omission of drug quantity information from his indictment affected his substantial rights where he had signed a plea agreement in which he had admitted to a quantity of drugs. *Stafford*, 258 F.3d at 478.

conspiracy. The government need only show that "the defendant knew the essential object of the conspiracy," *United States v. Hernandez*, 31 F.3d 354, 358 (6th Cir. 1994) (quoting *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986)).

The essential object of this conspiracy would have been the distribution of methamphetamine. Ramirez-Mendoza acknowledges that he sold methamphetamine to Butterfas and King, and there was evidence that Ramirez-Mendoza was aware of the conspiracy. In his conversation with Butterfas, Ramirez-Mendoza says, "I know you got trouble, you in trouble with the people [inaudible]." Moreover, Butterfas testified that she told Ramirez-Mendoza that she was sending the drugs to North Carolina and Tennessee to her "people." Ramirez-Mendoza vaguely challenges this testimony by pointing out that Butterfas waited until the day before trial to inform the government that Ramirez-Mendoza knew that the drugs he was selling her were being distributed in Tennessee and North Carolina. If this is an attack on the credibility of the evidence, then it fails since, as discussed above, credibility attacks do not go to the sufficiency of the evidence. *Sanchez*, 928 F.2d at 1457. It is implausible that Ramirez-Mendoza could speak with Butterfas of her "people"'s arrest and not know of a conspiracy.

Ramirez-Mendoza attempts to raise a multiple conspiracy issue by asserting that "at best there is a separate conspiracy." He does not, however, offer any facts in support of his theory that there were multiple conspiracies but rather recites factors used by the Ninth Circuit to determine whether a defendant knowingly participated in a single overall conspiracy. We have addressed the multiple conspiracy issue in the context of a drug chain conspiracy: "[I]n determining whether the evidence showed a single conspiracy or multiple conspiracies, it must be remembered that in a drug 'chain conspiracy' . . . , 'it is enough that each member of the conspiracy realizes that he is participating in a joint enterprise, even if he does not know the identities of many of the participants.'" *United*

*States v. Odom*, 13 F.3d 949, 959 (6th Cir. 1994) (citation omitted).

In the instant case, Ramirez-Mendoza was directly in contact with Clark and King, and Clark was in Tennessee. Even if the government had not shown Ramirez-Mendoza's connections to Clark, under our standard, it is enough if a defendant knows he is participating in a joint enterprise. Ramirez-Mendoza in the taped conversation with Butterfas refers to her "people" who have been in trouble with the law; he was aware that the drugs he was selling her were being distributed. There was sufficient evidence to show that Ramirez-Mendoza knowingly participated in the charged conspiracy.[1]

### III.

King argues that the district court erred by allowing the government in its closing argument to read from the transcript of a tape that had been introduced during trial. King claims that the references to the transcript led the jury to believe that the transcript accurately reflected the conversation that took place.

"As with tape recordings of communications, the use of a transcript of a recorded communication during trial is within the sound discretion of the trial court." *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995). The defendant challenging the use of a transcript must show prejudice. *United States v. Scarborough*, 43 F.3d 1021, 1025 (6th Cir. 1994) ("Use of transcripts not in evidence is permissible where the tape is in evidence, the defendant has not questioned the accuracy of the transcript, and the defendant

---

[1] Ramirez-Mendoza argues that the taped conversation between him and Butterfas cannot be evidence that he agreed to participate in a conspiracy because Butterfas had become a government informant by the time of the tapes. As noted above, the tapes nevertheless may be evidence of Ramirez-Mendoza's agreement to conspire with others. *Esparsen*, 930 F.2d at 1472 n.11.

final sentence – imposed pursuant to the Guidelines and supported by findings of fact appropriately found by a preponderance of the evidence – offends neither *Apprendi* [n]or *Ramirez*.

*Garcia*, 252 F.3d at 843. As we explained in *Stafford*, *Apprendi* applies "where a District Court makes findings of fact under the 'preponderance' standard and then imposes a sentence at the bottom of a higher statutory range, thereby evincing its belief that it was 'constrained by a specific statute to impose the sentence it did.'" *Stafford*, 258 F.3d at 479 n.9 (quoting *Garcia*, 252 F.3d at 843).

In *Stafford* itself, defendant pleaded guilty and stipulated to being responsible for 235.42 grams of cocaine-base and 14.48 grams of cocaine. He was sentenced to 188 months' imprisonment pursuant to the sentencing guidelines. Stafford later argued that the government had failed to prove that he was responsible for cocaine base, rather than cocaine in its powder form. This difference in form affected the statutory sentencing range to which Stafford was exposed, taking him out of the default provision contained at 21 U.S.C. § 841(b)(1)(C) (specifying up to twenty years' imprisonment) and subjecting him instead to 21 U.S.C. § 841(b)(1)(A) (ten year minimum). Although we rested our holding on the fact that Stafford's substantial rights had not been affected by any error at sentencing, we also noted that "[d]efendant's sentence d[id] not run afoul of *Apprendi*, because it [wa]s both below the 20-year statutory maximum established by the 'catchall' provision at § 841(b)(1)(C), and above the 10 year statutory minimum found at § 841(b)(1)(A)." *Stafford*, 258 F.3d at 479 n.9.

In the present case, King's 151 month term of imprisonment was below the twenty year statutory maximum established by § 841(b)(1)(C), and above the 10 year statutory minimum found at § 841(b)(1)(A). Under such circumstances we do not believe that an *Apprendi* error occurred as to this portion of King's sentence. In any event, as we will discuss

King also mounts a challenge to his term of imprisonment. The district court adopted the PSR's finding that King had been responsible for between 300 grams and one kilogram of methamphetamine and sentenced him to 151 months' imprisonment pursuant to the relevant sentencing guidelines. This term of imprisonment exceeded the mandatory minimum term of ten years that King was otherwise eligible to receive under 21 U.S.C. § 841(b)(1)(A), but was less than the default provision which provides for a maximum of twenty years and no minimum sentence. 21 U.S.C. § 841(b)(1)(C). King's prison sentence in this case is similar to that of the defendants in *United States v. Garcia*, 252 F.3d 838 (6th Cir. 2001), and *United States v. Stafford*, 258 F.3d 465, (6th Cir. 2001). In both cases we declined to find an *Apprendi* error.

Garcia was sentenced to 135 months' imprisonment under the sentencing guidelines based on the district court's determination that he was responsible for 2,499 kilograms of marijuana. Prior to sentencing Garcia had admitted his responsibility for 625 kilograms of marijuana, but denied he was responsible for a greater amount. The district court's determination that Garcia was responsible for a larger quantity of drugs increased the statutory sentencing range to which Garcia was susceptible from between five years and forty years of imprisonment, 21 U.S.C. § 841(b)(1)(A), to between ten years and life imprisonment. 21 U.S.C. § 841(b)(1)(B). Garcia argued that the district court's drug quantity determination constituted an *Apprendi* error as it increased the range of sentences to which he was exposed. We disagreed.

> Although the district court's findings here brought the defendant within the sentencing range of § 841(b)(1)(A) (specifying 10 years to life), which is a higher range than he explicitly admitted to at his allocution, *see* § 841(b)(1)(B)(specifying 5-40 years), the sentence imposed here was not at the bottom of the higher statutory range, as it was in *Ramirez*. Thus nothing indicates that the district court thought itself constrained by a specific statute to impose the sentence it did. The

has shown no prejudice"). The admission of written transcripts of recorded conversations is not prejudicial error unless an inaccuracy exists in the transcript. *United States v. Crane*, 632 F.2d 663, 664 (6th Cir. 1980) (per curiam); *United States v. Nickerson*, 606 F.2d 156, 158 (6th Cir. 1979).

In the instant case, the prosecution mentioned the Butterfas-King transcript in rebuttal during closing argument. King's counsel objected,[2] but the court overruled the objection, noting that it was permissible to refer to the transcript in closing argument. Government counsel continued to refer to the transcript:

> Ms. Butterfas says, okay, listen, have you heard anything. What does Mr. King say? He says, not about what. He says, uh-uh, what is going on. She then tells him that DEA came here yesterday. He says, did he? She says, do you know, she says she told DEA or DEA asked her do you know David Clark. She told him I have known him for years and DEA says, well, why are you receiving mail from him and Jim King says, yeah. She goes on to say, I said, yeah. They said, do you know Jim King. Known him for years, me and Kirk used to live in Lebec. Jim King says, yeah. And then for some reason the very next thing Jim King says is, the only time I received mail from him was once up there. That being in Lebec. Ladies and gentlemen, that is an acknowledgment on behalf of a defendant to be tried by you that he was receiving mail from David Clark.

The attorney continues to quote, paraphrase, and comment on the transcript, discussing the post office boxes and David

---

[2]The government had provided defendants with copies of the tapes and transcripts before trial, and defendants did not challenge the accuracy of the transcripts at trial or on appeal. At trial, the tapes were introduced into evidence, and the transcript was introduced as an exhibit; King's attorney objected to the transcript as cumulative, but not to its accuracy. On appeal, King claims that the tapes were difficult to understand, but he has not identified any portions of the transcript read in the closing argument that did not correspond to the tapes.

Clark.  Before submitting the case to the jury, the district court instructed the jury that the transcript was not evidence and the tape controlled.

In *Scarborough*, the trial court, after reviewing tapes of co-conspirators and the government-made transcript, allowed the jury to use the transcript as a guide while listening to tapes. We rejected defendant's challenge to this practice for a number of reasons:

> [A]lthough defendant has questioned the accuracy of the tapes, he has not shown that the transcripts were inaccurate in any way or how he was prejudiced. The District Court instructed the jury that the transcript is not evidence and repeated this instruction before giving the transcript to the jury during deliberations. The court also, at the request of defendant, told the jury that the transcript represented the government's version of the tape.

*Scarborough*, 43 F.3d at 1025.

King relies on *United States v. Robinson*, 707 F.2d 872 (6th Cir. 1983), in which we found that the district court had abused its discretion in allowing the use of a transcript in a RICO trial involving the confiscation of "bootlegging" contraband.  The tapes were in significant part unintelligible without the transcript, and the transcript had been prepared with the aid of the recollections of agents who had monitored the conversations as they were being recorded.  *Id.* at 877. We found that "several of the tapes [were] so inaudible that it would be impossible to transcribe them without an independent recollection of the conversations."  *Id.*  We reversed and remanded, and set out guidelines for the future use of transcripts:

> [I]n the absence of a stipulation, we hold that the transcriber should verify that he or she has listened to the tape and accurately transcribed its content. The court should also make an independent determination of accuracy by reading the transcript against the tape.

If no drug quantity had been specified, Strayhorn would have been sentenced under the (marijuana) default provisions of § 841(b)(1)(D), which, when defendant has a prior felony drug conviction, provide for a maximum of ten years for up to 50 kilograms of marijuana.  The government argued that defendant's sentence did not violate *Apprendi* because it did not exceed the statutory maximum of ten years.  Nevertheless, we reversed because the "the district court's drug quantity finding increased the statutory sentence to which [defendant] was exposed from a *maximum* term of ten years' imprisonment pursuant to 21 U.S.C. § 841(b)(1)(D) to a mandatory *minimum* sentence of ten years' imprisonment under § 841(b)(1)(B)."  *Strayhorn*, 250 F.3d at 469.

Similarly, in *Ramirez* we held that "[a]ggravating factors, other than a prior conviction, that increase the penalty from a nonmandatory minimum sentence to a mandatory minimum sentence, *or from a lesser to a greater minimum sentence*, are now elements of the crime to be charged and proved." *Ramirez*, 242 F.3d at 351-52 (emphasis added).  In *Ramirez*, the defendant had received a mandatory minimum sentence of twenty years under 21 U.S.C. § 841(b)(1)(A) for a quantity of cocaine over five kilograms.  The default provision did not include a mandatory minimum.  We reversed because "the government did not charge or attempt to prove to the jury a quantity of drugs that would permit a mandatory sentence." *Id.* at 352.  Here too, the government neither charged nor attempted to prove to the jury a quantity of drugs that would permit an increase in the minimum term of King's supervised release.  As a result this portion of King's sentence was erroneous under *Apprendi*.[5]

---

[5]King's challenge to his supervised release term also survives our recent decision in *United States v. Garcia*, 252 F.3d 838 (6th Cir. 2001). As will be discussed more fully below, *Garcia* limited the scope of *Ramirez* to cases in which the district court was constrained by the operation of a sentencing statute to impose a particular sentence. *Garcia*, 252 F.3d at 843.  Here the operation of the statute raised the minimum supervised release term faced by King to five years—the precise term of the sentence ultimately imposed on King.  Under such circumstances, *Garcia* does not apply.

He received 151 months of imprisonment and five years of supervised release under 21 U.S.C. § 841(b)(1)(A), which provides that the term of supervised release for possessing at least 50 grams of pure methamphetamine is "at least 5 years" if there was no prior conviction.  21 U.S.C. § 841(b)(1)(A).

In a case where a quantity of drugs was not alleged in the indictment or proven to a jury, this court has determined that the "prescribed statutory maximum" is set in the statutory provision for drug offenses where no quantity is specified. *See* 21 U.S.C. § 841(b)(1)(C); *Ramirez*, 242 F.3d at 352.  For King, this default subsection would provide for a term of supervised release of at least three years (and imprisonment of not more than twenty years), if no amount of methamphetamine were specified.  As there is no "prescribed statutory maximum" for supervised release in the relevant statute, King is left with the argument that the drug quantity increased the statutory *minimum* of his supervised release term from three years to five years.  *See United States v. Gibbs*, 58 F.3d 36, 37-38 (2d Cir. 1995) ("The rule in this circuit is that in view of the 'at least' language [of 21 U.S.C. § 841(b)(1)(C)], no maximum term of supervised release is imposed by such a provision, and therefore that the statutory maximum term of supervision release is a life term.").

In view of our recent decisions we conclude that an *Apprendi* error occurred in King's sentencing.  In *United States v. Strayhorn*, 250 F.3d 462 (6th Cir. 2001), the defendant pleaded guilty to conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846.  He nevertheless consistently denied responsibility for the full amount (188 kilograms) of marijuana the government attributed to him as relevant conduct.  The district court sentenced defendant to ten years' imprisonment and eight years of supervised release, pursuant to the mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(B) for a drug offense involving more than 100 kilograms of marijuana.  We reversed.

Where, as here, there are inaudible portions of the tape, the court should direct the deletion of the unreliable portion of the transcript. This, however, assumes that the court has predetermined that unintelligible portions of the tape do not render the whole recording untrustworthy.

*Id.* at 878-79; *see also Wilkinson*, 53 F.3d at 762 (approving the use of a government-prepared transcript when the district court had made a finding of the transcript's accuracy, an FBI agent testified as to its accuracy, there was testimony corroborating the content, and the district court issued a cautionary jury instruction).

In the instant case, defendants have not alleged that the inaudible portions of the transcript are so great as to render the entire transcript untrustworthy, as in *Robinson*.  The government had Butterfas testify as to the accuracy of the transcripts, which were of her own conversations, the court cautioned the jury that the attorneys' arguments were not evidence, and the transcript was not sent back with the jury during deliberations.  Defendants have not demonstrated prejudice, and the district court did not abuse its discretion in allowing the government to refer to the transcript.

### IV.

King and Ramirez-Mendoza argue that the drug quantity upon which their sentences were based should have been alleged in the indictment and proven to the jury.  They rely on *Jones v. United States*, 526 U.S. 227 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The *Jones* Court held that the provisions of a carjacking statute which established higher penalties when the offense involved injury or death were elements of the offense, not mere sentencing considerations. *Jones*, 526 U.S. at 251-52.  In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.

Neither defendant raised a *Jones-Apprendi* issue at trial or at sentencing (*Apprendi* was decided after their sentencing.) We therefore review for plain error. FED. R. CRIM. P. 52(b); *United States v. Neuhausser*, 241 F.3d 460, 466 (6th Cir. 2001).[3] A case reviewed for plain error must meet the four-part test set forth in *United States v. Olano*, 507 U.S. 725, 732 (1993), and clarified in *Johnson v. United States*, 520 U.S. 461 (1997). In *Johnson*, the Court stated:

> [B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Johnson*, 520 U.S. at 466-67 (internal quotations and citation omitted). We turn now to the alleged errors.

### a) Ramirez-Mendoza

Ramirez-Mendoza makes an *Apprendi-Jones* challenge to his term of imprisonment. He received 240 months (twenty years) of imprisonment and ten years of supervised release under 21 U.S.C. § 841(b)(1)(A). Ramirez-Mendoza did not object to the presentence report ("PSR") finding that he was responsible for more than 300 grams but less than one kilogram of actual methamphetamine, or that he had prior convictions, so the district court sentenced him based on these findings. The statute provides a mandatory minimum of

---

[3]Ramirez-Mendoza contends that the *Apprendi* argument is a challenge to the sufficiency of the indictment which should be reviewed de novo. We have not, however, construed *Apprendi* claims to be challenges to the sufficiency of the indictment and have used plain error review (even when *Apprendi* had not been decided at the time a defendant was tried and sentenced). *See Neuhausser*, 241 F.3d at 464; *see also Johnson v. United States*, 520 U.S. 461 (1997) (applying plain error review to a claim that an essential element of the offense had not been submitted to the jury).

twenty years for a defendant convicted of possessing 50 grams or more of pure methamphetamine if the defendant has a prior conviction for a felony drug offense. 21 U.S.C. § 841(b)(1)(A). Ramirez-Mendoza argues that under *Apprendi* and *Jones*, both the drug quantity and his prior conviction were elements of the offense that had to be proven to the jury.[4]

If no drug quantity had been specified, the statute would provide for a maximum prison term of twenty years' imprisonment and at least three years of supervised release, unless defendant had a prior felony drug conviction, in which case the maximum would be thirty years, with at least six years of supervised release. *See* 21 U.S.C. § 841(b)(1)(C). While Ramirez-Mendoza's sentence falls below the maximum term authorized by 21 U.S.C. § 841(b)(1)(C), this court has held that "[a]ggravating factors, other than a prior conviction, that increase the penalty from a nonmandatory minimum sentence to a mandatory minimum sentence, or from a lesser to a greater minimum sentence, are now elements of the crime to be charged and proved." *United States v. Ramirez*, 242 F.3d 348, 351-52 (6th Cir. 2001). Recognizing that this is a case in which the drug quantity finding did "increase the prescribed range of penalties to which . . . [Ramirez-Mendoza was] exposed," *Ramirez*, 242 F.3d at 350 (quoting *Apprendi*, 530 U.S. at 490), the government conceded at oral argument that an *Apprendi* error had occurred in Ramirez-Mendoza's sentencing.

### b) King

King challenges his supervised release term. King's sentence was based on the PSR's determination of the drug quantity as at least 300 grams but less than one kilogram of actual methamphetamine. King objected only that the amount was closer to the 300 gram level than the one kilogram level.

---

[4]*Apprendi* made clear that prior convictions are sentencing factors and not elements to be proven to the jury, *Apprendi*, 530 U.S. at 488-90, thus foreclosing this portion of Ramirez-Mendoza's argument.