UNITED STATES of America,
Appellee,

v.

Kevin KERR, Appellant.

No. 00–1549.

United States Court of Appeals,
Sixth Circuit.

Oct. 31, 2002.

Before MARTIN, Chief Circuit Judge, MOORE, Circuit Judge, and WISEMAN,

Senior District Judge.*

WISEMAN, Senior District Judge.

Defendant–Appellant Kevin Kerr ("Appellant") appeals his conviction and sentence on seven counts related to his participation in a cocaine acquisition and distribution scheme. Appellant argues that the district court committed plain error in sentencing him to a term of life imprisonment without parole in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Second, Appellant asserts that the district court did not make the proper inquiry before allowing him to waive his right to counsel and to proceed *pro se*. For the reasons stated herein, we **AFFIRM** Appellant's conviction and sentence.

## I.

Appellant Kevin Kerr ("Appellant") was arrested and charged with a number of counts relating to his participation in a cocaine acquisition and distribution scheme. Appellant was originally indicted in 1995, and in 1996 pled guilty to one count of conspiracy to distribute cocaine and one count of aiding and abetting a money laundering scheme. The plea agreement offered a sentence cap of 144 months. Appellant subsequently withdrew this plea, claiming he was "pressured" by the United States (the "Government"), after which the Government filed a notice of sentence enhancement under 21 U.S.C. § 851 because it was his third felony drug offense. In 1997, after issuance of a second superseding indictment and appointment of a third trial attorney, Appellant pled guilty to one count of conspiracy to distribute and distribution of cocaine base and conspiracy to launder monetary in-

struments. This agreement included a 240 month sentence cap after the § 851 sentencing enhancement was amended to give Appellant second offender status, as well as an agreement that Appellant would be sentenced to a term of supervised release, to be served after incarceration, of between three and five years. After a fourth attorney was appointed for Appellant, he sought to withdraw the plea because the district court (although not stating it as such) essentially rejected the plea agreement by sentencing him to 240 months imprisonment and *eight* years (instead of three to five years) of supervised release. On appeal, this Court reversed the decision of the district court not allowing Appellant to withdraw his guilty plea for a second time, vacated the sentence, and remanded the case. *United States v. Kerr*, No. 97–1539, 1998 WL 940130 (6th Cir. Dec. 23, 1998) (unpublished opinion).

On August 5, 1999, Appellant was named in the third superseding indictment, a seven-count indictment alleging: (1) one count of conspiracy to distribute and possession with intent to distribute controlled substances (cocaine, cocaine base, and heroin), 21 U.S.C. §§ 841(a)(1) and 846; (2) one count of conspiracy to launder monetary instruments, 18 U.S.C. § 1956(h); (3) three counts of laundering monetary instruments, 18 U.S.C.1956; (4) one count of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g); and (5) one count of possessing a firearm with an obliterated serial number, 18 U.S.C. § 922(k). According to the indictment, both conspiracies took place between February 1993 and February 1994 in the Detroit, Michigan area and included at least five other indicted co-conspirators.

---

* The Honorable Thomas A. Wiseman, Jr., Senior Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

Appellant, appearing *pro se,* pled not guilty to all counts. The government filed a 21 U.S.C. § 851 enhancement on September 17, 1999, because of two prior state convictions of Appellant. A jury convicted Appellant of all seven counts on November 30, 1999. The jury determined the following amounts of controlled substances were involved in the conspiracy: five kilograms or more of cocaine, 50 grams or more of cocaine base, and 100 grams or more of heroin. (Jt. App. at 115–16.) On April 26, 2000, the district court sentenced Appellant to serve life imprisonment without parole on count one; 240 months on counts two, three, four, and five; 120 months on count six; and 60 months on count seven, to run concurrently. Appellant filed a timely notice of appeal on April 27, 2000.

## II.

Appellant challenges his sentence of life imprisonment for count one because the jury did not make a finding of which quantities of drugs were attributable to him individually. According to Appellant, this violates the Supreme Court's pronouncement in *Apprendi:* "Other than the facts of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (citing *Jones v. United States,* 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (opinions of Stevens, J. and Scalia, J.)). *See Harris v. United States,* —— U.S. ——, 122 S.Ct. 2406, 2418, 153 L.Ed.2d 524 (2002).

Count one alleged a violation of 21 U.S.C. §§ 841(a)(1) and 846. Section 841 provides the penalties for both of these provisions. 21 U.S.C. § 841(b). If the amounts are one kilogram or more of heroin, five kilograms or more of cocaine, and 50 grams or more of cocaine base, then the statute prescribes a minimum sentence of 10 years and a maximum sentence of life. *Id.* at § 841(b)(1)(A). If the defendant has a prior felony drug offense conviction, the statutory minimum goes up to 20 years. *Id.* If the defendant has two prior felony drug offenses, then the statute requires a mandatory sentence of life imprisonment without release. *Id.* If the amounts are 100 grams or more of heroin, 500 grams or more of cocaine, and 5 grams or more of cocaine base, the statute prescribes a minimum sentence of 5 years and a maximum sentence of 40 years. *Id.* at § 841(b)(1)(B). If the defendant has a prior felony drug offense conviction, the statutory minimum goes up to 10 years and the maximum to life imprisonment. *Id.* If the amount of narcotics is below those levels, the maximum sentence is 20 years, or 30 years if the defendant has a prior felony drug offense conviction. *Id.* at § 841(b)(1)(C). Applying *Apprendi* to these statutory provisions, it becomes apparent that unless a jury finds beyond a reasonable doubt that the defendant possessed the minimum amounts required by § 841(b)(1)(A) or § 841(b)(1)(B), the defendant must be sentenced under 21 U.S.C. § 841(b)(1)(C). *See United States v. Ramirez,* 242 F.3d 348, 351–52 (6th Cir.2001).

The district judge sentenced Appellant to life because he had two prior felony drug offense convictions, and the jury had found the drug amounts equal to those listed in § 841(b)(1)(A). (Jt. App. at 480, 484, 490.) The judge did state that she would rather impose a lesser sentence considering Appellant's youth and intelligence. *Id.* at 490. Appellant argues that, because the jury did not find specific amounts of drugs attributable to him (as opposed to the conspiracy as a whole), the district court improperly sentenced him above the statutory maximum of 30 years under

§ 841(b)(1)(C). *See United States v. Flowal*, 234 F.3d 932, 936 (6th Cir.2000).

Assuming that the requirements of *Apprendi* were not met because the jury only found drug amounts attributable to the conspiracy as a whole, Appellant did not object at sentencing to the amounts of controlled substances, so this Court reviews for plain error. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Thomas*, 11 F.3d 620, 629–30 (6th Cir.1993). To establish plain error, Appellant must first show that this Court has appellate authority under Fed.R.Crim.P. 52(b). *United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). There are three limitations on appellate authority: (1) an error must have occurred in the district court proceedings, (2) the error must be "plain," and (3) the plain error must "affect substantial rights." *Johnson*, 520 U.S. at 466–67; *Thomas*, 11 F.3d at 629–30. If these three conditions are met, then an appellate court may exercise its discretion to reverse if (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (1997); *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

The Government does not raise a serious argument concerning the first two prongs: (1) there was an error, and (2) it was "plain." Rather, the Government emphasizes Appellant's inability to meet the last two prongs: (3) the error affected substantial rights, and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (1997); *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). The third prong, whether the error affected substantial rights, requires proof that the error caused prejudice. *See United States v. Mojica–Baez*, 229 F.3d 292, 307 (1st Cir.2000) (citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Unlike the harmless error test, also listed in Fed.R.Crim.P. 52, the defendant bears the burden of showing prejudice under the plain error test. *Id.* Thus, demonstrating that an element of the offense was not submitted to the jury does not alone satisfy the third prong of the plain error test; the defendant must show that the error affected the outcome of the district court proceedings. *Id.* (quoting *United States v. Colon–Munoz*, 192 F.3d 210, 222 (1st Cir. 1999), *cert. denied*, 529 U.S. 1055, 120 S.Ct. 1559, 146 L.Ed.2d 463 (2000)); *United States v. Sifuentes*, 2002 U.S.App. LEXIS 3696, at *13–14, 2002 WL 358777, 30 Fed. Appx. 555 (6th Cir. March 5, 2002) (unpublished opinion).

If a defendant admits the amount of drugs involved in a plea agreement, then there is no doubt about drug quantity and the defendant will not be able to show prejudice in connection with a sentence based on that drug quantity, even if not found by a jury. *United States v. Stafford*, 258 F.3d 465, 477 (6th Cir.2001). *See United States v. Harper*, 2002 U.S.App. LEXIS 13155, at *11, 40 Fed.Appx. 112, 2002 WL 1402212 (6th Cir. June 27, 2002) (unpublished opinion); *United States v. Spearman*, 2002 U.S.App. LEXIS 12300, at *3, 37 Fed.Appx. 772, 2002 WL 1354698 (6th Cir. June 19, 2002) (unpublished opinion). Similarly, if the trial produced uncontested and overwhelming evidence of drug quantity sufficient to support the sentence, the defendant will not be able to show that the error affected substantial rights. *United States v. King*, 272 F.3d 366, 379 (6th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2344, 153 L.Ed.2d 172 (2002). *See United States v. Montgomery*, 262 F.3d 233, 252 (4th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 576, 151 L.Ed.2d 448 (2002); *United States v.*

*Swatzie,* 228 F.3d 1278, 1283 (11th Cir. 2000), *cert. denied,* 533 U.S. 953, 121 S.Ct. 2600, 150 L.Ed.2d 757 (2001). Thus, whether guilt was determined by a plea bargain or a guilty verdict does not affect the court's plain error review. *King,* 272 F.3d at 379.

Even if a court finds that the third prong has been met, the Supreme Court has stated that the final prong, whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings," cannot be met when the evidence supporting the element not decided by the jury is "overwhelming." *Johnson v. United States,* 520 U.S. 461, 469–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). This principle applies to post-*Apprendi* decisions as well. *See United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1786, 152 L.Ed.2d 860 (2002); *United States v. Terry,* 240 F.3d 65, 74 (1st Cir.2001); *United States v. Barbosa,* 271 F.3d 438, 460 (3d Cir.2001); *United States v. Promise,* 255 F.3d 150, 163–64 (4th Cir.2001) (*en banc*); *United States v. Miranda,* 248 F.3d 434, 446 (5th Cir.2001); *United States v. Martinez,* 258 F.3d 582, 586 (7th Cir.2001); *United States v. Sifuentes,* 2002 U.S.App. LEXIS 3696, at *25–29, 2002 WL 358777, 30 Fed.Appx. 555 (6th Cir. March 5, 2002) (unpublished opinion).

Because Appellant did not plead guilty to this third superseding indictment, the Court must look at the proof in the record concerning drug quantities to determine if the district court committed plain error that substantially affected Appellant's rights. The jury found drug quantities of both cocaine and cocaine base for the conspiracy as a whole that support Appellant's sentence. If there is overwhelming evidence in the record to support the conclusion that five kilograms or more of cocaine or 50 grams or more of cocaine base would have been attributed by the jury to Appellant, then there was no plain error affecting a substantial right in the district court's sentencing of Appellant.

■ The record demonstrates that Appellant's contention is without merit. First, the government did allege these amounts in the indictment, and they were submitted to the jury. *Cf. United States v. Ramirez,* 242 F.3d 348 (6th Cir.2001) (involving an indictment which did *not* state specific amounts of drugs involved); *United States v. Jordan,* 291 F.3d 1091, 1096 (9th Cir.2002) (same). The only issue results from the fact that the amounts were described as "involved in the conspiracy," not solely attributable to Appellant. (Jt. App. at 115.) Whether or not this raises an *Apprendi* problem, considering that Appellant was the only defendant at trial, need not be decided because there is overwhelming and undisputed evidence in the record to support the district court's finding that these amounts were attributable to Appellant. *See United States v. Cleaves,* 299 F.3d 564, 569 (6th Cir.2002) (reversing because the evidence of drug amounts was speculative). Most importantly, Appellant admitted on cross-examination that he was in possession of, and in agreement with other people to distribute, at least six and a half kilograms of cocaine. (Jt. App. at 162–66); *United States v. Stafford,* 258 F.3d 465, 477 (6th Cir.2001). *Cf. United States v. Flowal,* 234 F.2d 932 (5th Cir.2000) (reversing the sentence because the district judge determined the amount of cocaine involved was over five kilograms without requiring substantial proof by the government, despite the fact that there was conflicting DEA expert testimony stating the amount as 4.997 kilograms). Additionally, Appellant did not object to these quantities in the presentence report. (Jt. App.485, 488); *United States v. Cotton,* —— U.S. ——, 122 S.Ct. 1781, 1786–87, 152 L.Ed.2d 860 (2002); *United States*

*v. King,* 272 F.3d 366, 379 (6th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 2344, 153 L.Ed.2d 172 (2002); *United States v. Doe,* 297 F.3d 76, 87 (2d Cir.2002).

Furthermore, testimony by Appellant's girlfriend and co-conspirator, Candace Waterman ("Waterman"), overwhelmingly supports this admission. Before Appellant's arrest, Waterman testified to receiving four kilograms of cocaine from couriers. (Jt. App. at 287, 294, 309.) After Appellant's arrest, she received another three kilograms. *Id.* at 306, 303. She also testified to distributing at the direction of Appellant well over five kilograms of cocaine powder after Appellant's arrest. *Id.* at 259–61, 270–71, 275–78. Finally, she testified to distributing well over fifty grams of cocaine base after Appellant's arrest. *Id.* at 263–64, 267, 272–75, 279. These transactions took place as part of the conspiracy alleged in the indictment and for which the jury found Appellant guilty. Several couriers corroborated the testimony of Waterman. *Id.* at 176–77, 180–81, 190, 192, 194–95, 227, 231–33, 238–39, 361, 363–64, 514–16, 520, 526–27. This evidence was further corroborated by several customers who testified to receiving cocaine from Appellant and Waterman. *Id.* at 199–200, 202–03, 244–46, 249–52, 385–87, 391–92. These witnesses identified Appellant as a prominent figure in the conspiracy, if not the mastermind behind the whole operation. *Id.* at 181, 195, 199, 201, 227, 232, 244, 249, 270, 361, 384, 391–92, 526.

Such overwhelming and uncontested evidence of drug quantity precludes a finding that the plain error substantially affected Appellant's rights or seriously affected the public integrity, fairness, or reputation of the district court proceedings. *See Cotton,* 122 S.Ct. at 1786–87; *King,* 272 F.3d at 379; *Montgomery,* 262 F.3d at 252. The fact that Appellant admitted to possessing with intent to distribute over five kilograms of cocaine is alone enough to defeat his *Apprendi* claim. *Stafford,* 258 F.3d at 477. Appellant is not able to prove the third and fourth prong of the plain error test.

### III.

As the second basis of his appeal, Appellant argues that the district court did not make the proper inquiry before allowing him to waive his right to counsel and proceed *pro se.* This Court reviews matters of constitutional law *de novo. United States v. Jackson,* 181 F.3d 740, 743 (6th Cir.1999); *United States v. Knipp,* 963 F.2d 839, 842 (6th Cir.1992).

In order for a defendant to waive his right to assistance of counsel and proceed in representing himself, the court must ensure that he "knowingly and willingly" is foregoing the traditional benefits that are associated with the right to counsel. *Faretta v. California,* 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1974). The defendant should be made aware of the dangers and disadvantages of self-representation so that the record establishes that he knew the choice he was making. *Id.* This Court has previously laid out the nature of the inquiry and the procedure that a district judge should follow on the record before allowing a defendant to proceed *pro se. United States v. McDowell,* 814 F.2d 245, 250 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987). The inquiry should follow or cover the same substantive points as laid out in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed. 1986),[1] as well as an express finding that the accused has made

---

1. The Guidelines state that the judge should ask questions similar to the 16 listed questions. Those questions are reproduced in an Appendix to the *McDowell* decision.

a knowing and voluntary waiver of counsel. *Id.* These questions are "designed to ascertain the defendant's familiarity with the law, to warn the defendant of the gravity of the charges and the dangers of self-representation, and to determine whether the defendant's decision to waive counsel is voluntary." *United States v. Miller*, 910 F.2d 1321, 1324 (6th Cir.1990), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). Substantial compliance, but not literal adherence, to those guidelines is required. *Id.* In *Miller*, the court asked: (1) if the defendant understood he had the right to have an attorney, and if he could not afford one the court would provide him with one; (2) if he had represented himself in any previous matters or criminal actions; (3) if he realized the charges and possible sentence and fines, as repeated by the court; (4) if he understood that the sentencing guidelines will affect his sentence if he pleads guilty; (5) if he understood that it would be difficult to represent himself; and (6) if the decision was entirely voluntary. *Id.* at 1324 n. 3. This Court found that this inquiry "touched upon all of the relevant considerations addressed in the model inquiry." *Id.*

In this case, the district judge asked the following questions before allowing Appellant to waive his right to counsel and represent himself: (1) if Appellant had ever studied law; (2) if he had ever represented himself or any other defendant in a criminal action; (3) if he realized he was charged with serious offenses, one of which carried a life sentence; (4) after having the Assistant United States Attorney recite the counts against Appellant and noting that his two prior offenses exposed him to mandatory life if convicted, whether Appellant understood this possibility; (5) if Appellant understood that he would be on his own in the proceeding if he represented himself; (6) if he understood that the judge would not be able to advise him on how to try his case; (7) if he was familiar with the Federal Rules of Evidence and understood that they govern evidence at trial and that he would have to abide by those rules; (8) if he was familiar with the Federal Rules of Criminal Procedure and understood that they govern criminal actions in the district court; (9) if he understood that he would have to file any motions with the Clerk's Office and not just the court; (10) if he understood that he needed to familiarize himself more with how to file pleadings; (11) if he understood that if he took the witness stand at trial that he would have to present his testimony just as an attorney would present it; (12) if he understood that the court's position was that he would be better off with a trained lawyer appointed to him; (13) if he understood that the court thought it was unwise for him to represent himself; (14) if he understood that he was not as familiar with the law, court procedures, and rules as an attorney representing him would be; (15) if he was sure, knowing all of that, that he wanted to give up his right to counsel; and (16) if he was making the decision voluntarily and without having been forced or threatened. (Jt. App. at 424–30.) Appellant answered that he understood all of these points. *Id.* The court then made a specific finding that Appellant knowingly and voluntarily waived his right to counsel. *Id.* at 429–30.

In arguing that this inquiry did not comply with *McDowell*'s requirements, Appellant emphasizes: (1) that the Assistant U.S. Attorney read the charges and penalties; (2) that neither she nor the district judge described the nature of the charges and penalties as to all of the counts, only noting "conspiracy to launder monetary instruments and conspiracy to distribute cocaine, heroin and I believe crack co-

caine;" and (3) that there was no discussion of possible defenses for Appellant.

 There is no question that the district judge substantially complied with *McDowell*'s requirements, in fact following them almost verbatim. *McDowell*, 814 F.2d at App. The inquiry in this case exceeded that found to be sufficient in *Miller*, 910 F.2d at 1324. The district judge even went beyond the *McDowell* questions, specifically instructing Appellant on what he needed to do to file motions or briefs with the court. There is no mention in these guidelines of any requirement that the judge inform the defendant of possible defenses. *Id.* In any event, the district judge made clear to Appellant that she would not be able to advise him on how to try his case. The fact that the Assistant U.S. Attorney stated the charges is of no consequence because the information conveyed the major charges (the ones involving possible life sentences) against Appellant and the enhancement the Government would be seeking. Furthermore, the district judge made the seriousness of the charges clear by asking Appellant if he understood that if found guilty he might receive a mandatory life sentence. Appellant never faltered in his answers to the district judge's questions, but consistently remained committed to representing himself.

### IV.

Based on the foregoing, the district court's conviction and sentence of Appellant is **AFFIRMED.**