**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Scott SCARBOROUGH, Defendant–
Appellant.**

**No. 93–2502.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 26, 1994.

Decided Oct. 25, 1994. *

* This decision was originally issued as an "unpublished decision" filed on October 25, 1994. On

December 21, 1994, the court designated the opinion as one recommended for full-text publi-

cation.

David Debold (argued), John R. Roth, Asst. U.S. Atty. (briefed), Terrence G. Berg, Office of the U.S. Atty., Detroit, MI, for plaintiff-appellee.

Ralph Musilli (argued and briefed), Musilli & Baumgardner, St. Clair Shores, MI, for defendant-appellant.

Before: KEITH, KENNEDY, and SUHRHEINRICH, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant appeals his conviction on one count of conspiracy to obstruct justice and several counts of making false statements before a grand jury. Defendant first argues that the District Court erred in admitting taped conversations with co-conspirators and allowing the jury to use transcripts of these conversations. Specifically, defendant argues that the tapes were unintelligible, that the entire tapes should have been admitted rather than redacted versions, that the prosecution's transcript of the tape was inaccurate, and that the jury should not have been provided with the transcript during deliberations. In addition, defendant contends that the conversations were recorded in violation of the Fourth Amendment. Defendant further argues that the District Court should have allowed him to cross examine a government witness concerning the results of a polygraph examination. Finally, defendant alleges misconduct on the part of the prosecution during his trial. We affirm the District Court on all issues.

## I.

On April 16, 1990, the last day which tax returns could be postmarked that year, a firebomb was placed in a bin at the United States Post Office in Royal Oak, Michigan. At about eight p.m., a postal worker standing near the bin and collecting mail from individuals driving in front of the post office noticed smoke coming from one of the bins. He rummaged through the bin and retrieved a smoking brown padded envelope, addressed "to the tax thieves" from "freedom loving Americans." When the postal worker tried to extinguish whatever was causing the smoke by placing it in a puddle of water and stomping on it, the bomb detonated, injuring the postal worker and a bystander.

A federal grand jury investigation uncovered witnesses who testified that several members of the Metro Detroit Libertarians had a meeting to discuss the possibility of placing a device in the mail on that day to protest the tax system. The witnesses testified that this meeting included Peter Hendrickson, his girlfriend Doreen Wright, defendant Scott Scarborough and his wife Karen. The investigation also showed that Wright had taken the red phosphorus used in making the bomb from the school district at which she worked.

As a result of this information, Scott and Karen Scarborough were subpoenaed to testify before the grand jury after being given statutory compulsion immunity pursuant to 18 U.S.C. § 6002. Each testified that they had no knowledge of the scheme to bomb the post office and that Hendrickson could not have planted the bomb.

Hendrickson and Wright were charged with conspiracy to place the device at the post office. Hendrickson pled guilty in exchange for reduced charges and the dismissal of the charges against Wright. After the plea, in an attempt to reduce his upcoming sentence, Hendrickson and Wright secretly taped conversations with the Scarboroughs. The taped conversations corroborated Hendrickson's version of the events: that the Scarboroughs had assembled the device and that Scott Scarborough planted the bomb at the post office while Karen Scarborough and Hendrickson waited in the car.

On February 24, 1993, the Scarboroughs were indicted on one count of conspiracy to obstruct justice and several substantive counts of making false statements before the

grand jury. At trial, the government presented four audio tapes containing conversations between the Scarboroughs, Hendrickson, and Wright as evidence. Because the tapes contained six to eight hours of taped material, the government played a composite only of inculpatory conversations during trial. In addition, the government transcribed the composite tape and the transcript was given to the jury while the tapes were played. During deliberations, the jury requested and was given the transcript. The jury found the Scarboroughs guilty on all counts on August 27, 1993. On November 18, 1993, Scott Scarborough was sentenced to eighteen months imprisonment. Scarborough now appeals.[1]

## II.

Defendant first argues that the trial court erred in admitting the tapes because they were unintelligible. The government submitted the tapes and the transcript to the court for review to determine their audibility and admissibility. The District Court listened to the taped excerpts the government played at trial and determined that the tapes were "perfectly audible."

■ "It is well settled that the admission of tape recordings at trial rests within the sound discretion of the trial court." *United States v. Robinson,* 707 F.2d 872, 876 (6th Cir.1983). In order to be admissible, the district court must determine whether the tapes are "audible and sufficiently comprehensible for the jury to consider the contents." *Robinson,* 707 F.2d at 876. The district court abuses its discretion only "where the unintelligible portions of a tape recording are so substantial that the recording as a whole is rendered untrustworthy." *United States v. Scaife,* 749 F.2d 338, 345 (6th Cir.1984). We have reviewed the tape and also found it to be audible.

■ Defendant further argues that the government should have been required to admit the tape recordings in their entirety rather than redacted portions of the conversations. The District Court, after reviewing

the original tapes and the edited tapes, determined that it was not necessary for the government to play the entire taped conversations for the jury. The court did, however, make it clear to defendant that he could admit the whole or any other portion of the tapes if he desired to do so.

A decision to admit a composite tape is within the sound discretion of the trial court. *United States v. Segines,* 17 F.3d 847, 854 (6th Cir.1994). The District Court would have admitted the entire contents of the tapes at the request of the defendant. Defendant cannot now claim he was prejudiced when he did not avail himself of the opportunity to present any portions he deemed relevant.

Defendant also argues that the District Court abused its discretion in using the government's version of the transcript as a guide for the jury to use while listening to the tapes. The District Court reviewed the transcript while listening to the tapes and found that the transcript was accurate with the exception of two words which the court added. The court instructed the jury that the tapes themselves, not the transcripts, constituted the evidence.

■ The preferred practice is for the court not to submit transcripts to the jury unless the parties stipulate to their accuracy. *Robinson,* 707 F.2d at 876. However, if the parties cannot agree, a second method is for the trial court to determine the accuracy of the transcript by reading the transcript against the tapes in camera. *Id.* The District Court procedurally did what was required by reviewing the tapes and transcript. Furthermore, defendant has pointed to no specific inaccuracies in the transcript. The District Court did not abuse its discretion in allowing the transcript to be used as a guide by the jury.

■ Finally, defendant argues that the District Court erred in allowing the jury to use the transcript during deliberations because the transcript was not evidence. As long as the trial court instructs the jury that

---

1. Karen Scarborough was sentenced to three years probation, with the first eight months to be served in home confinement. Her conviction was affirmed. *United States v. Scarborough,* No. 93–2527, 1994 WL 396181 (6th Cir. July 28, 1994).

the tapes and not the transcripts are evidence it is not error to allow a jury to have transcripts in deliberations, even if the transcripts were not admitted into evidence. *United States v. Puerta Restrepo,* 814 F.2d 1236, 1242 (7th Cir.1987). Use of transcripts not in evidence is permissible where the tape is in evidence, the defendant has not questioned the accuracy of the transcript, and the defendant has shown no prejudice. *United States v. Taghipour,* 964 F.2d 908, 910 (9th Cir. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 283, 121 L.Ed.2d 210 (1992); *United States v. Costa,* 691 F.2d 1358, 1362–63 (11th Cir.1982).

In the case at bar, although defendant has questioned the accuracy of the tapes, he has not shown that the transcripts were inaccurate in any way or how he was prejudiced. The District Court instructed the jury that the transcript is not evidence and repeated this instruction before giving the transcript to the jury during deliberations. The court also, at the request of defendant, told the jury that the transcript represented the government's version of the tape. We presume that the jury followed the court's instructions. *United States v. Busacca,* 863 F.2d 433, 438 (6th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1640, 104 L.Ed.2d 156 (1989). Therefore, we hold that the District Court did not abuse its discretion in providing the transcript to the jury during deliberations.

### III.

Although defendant did not raise this argument at any time before or during trial, he now contends that the tapes were obtained in violation of the Fourth Amendment. Defendant argues that the trial court's decision to admit the tapes was plain error in light of the fact that the tapes were made, at the government's request, in defendant's home without a warrant.

■ Rule 52(b) of the Federal Rules of Criminal Procedure provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." How-

ever, there is a distinction between rights "forfeited" and rights "waived." [2] *United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). Constitutional objections "that appear for the first time on appeal are conclusively deemed to be waived, with the effect that [the appellate court is] deprived of jurisdiction." *United States v. Crismon,* 905 F.2d 966, 969 (6th Cir.1990); *United States v. Oldfield,* 859 F.2d 392, 396 (6th Cir.1988). Because defendant did not raise his Fourth Amendment objections at any time during the District Court proceedings, he has waived his right to object and we cannot now entertain these issues on appeal.

■ Additionally, even had defendant's objection been timely raised, it would not merit a reversal of his conviction. The Fourth Amendment does not apply if the search is "effected by a private individual not acting as an agent of the government.... [W]here a private person delivers the fruits of his search to police, that evidence is not excludable at trial on the basis that it was procured without a search warrant." *United States v. Clutter,* 914 F.2d 775, 778 (6th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991).

Hendrickson and Wright made the tapes on their own initiative in the hopes of reducing Hendrickson's sentence. Both Wright and Hendrickson testified at trial that they decided to make the tapes on their own without the knowledge or direction of the government. Thus, the tapes were privately obtained and no Fourth Amendment violation occurred.

### IV.

Defendant argues that the District Court abused its discretion when it prevented him from cross-examining Hendrickson concerning Hendrickson's failure of two government-administered polygraph tests. Defendant asserts that the government elicited the statements about the polygraph results, entitling

---

**2.** Forfeiture is the failure to timely assert a right whereas waiver is the " 'intentional relinquishment or abandonment of a known right.' " *Ola-* *no,* — U.S. at —, 113 S.Ct. at 1776 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

him to cross-examine the witness about the tests.

Prior to trial, the government had successfully moved to exclude results of the polygraph tests. During direct examination by the government, Hendrickson testified that he had been questioned by the government before he pled guilty about his role in the bombing. He voluntarily mentioned that he had taken a polygraph test in an answer that was nonresponsive to a prosecution question. The line of questioning continued and the polygraph was not referred to in any way. On cross-examination, counsel for defendant asked whether the government had asked Hendrickson to take the polygraph because the government did not believe him. The government objected and the District Court instructed the lawyers not to mention polygraphs. When Hendrickson later volunteered that he had failed the polygraphs, the trial court instructed the jury to disregard this testimony, explaining that such tests were inherently unreliable.

"Generally, the results of polygraph examinations are inadmissible into evidence." *United States v. Barger*, 931 F.2d 359, 370 (6th Cir.1991). However, in limited circumstances, the district court has discretion to admit evidence of a party's *willingness to take a polygraph examination. Wolfel v. Holbrook*, 823 F.2d 970, 972 (6th Cir. 1987), *cert. denied*, 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988). There was no abuse of discretion in preventing defendant from inquiring about the polygraph here because defendant wished to elicit the *results* of the test, rather than Hendrickson's willingness to take one. Results of a polygraph are not admissible for the reason that the District Court gave—they are inherently unreliable. *See Wolfel*, 823 F.2d at 974. Therefore, we find that the District Court did not err in precluding defendant from cross-examining the witness on his failure of the polygraph.

## V.

Finally, defendant makes allegations of government misconduct concerning subornation of perjury and falsification of evidence. While the knowing use of false or perjured testimony on the part of the government would entitle defendant to a new trial, "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989).

Our review of the record shows that what defendant classifies as misconduct is merely conflicting testimony between government witnesses. The government's expert testified that, based on his examination of the bomb scene, a tea bag found on the site was not inside the package containing the bomb. On the other hand, government photographs show the tea bag wrapped around glass tubing which was part of the device. Furthermore, Hendrickson testified that he wrapped a tea bag around the bomb's tubing as a reference to the Boston Tea Party tax protest. Absolutely nothing in the record supports defendant's charges of unethical and criminal behavior on the part of the government. Defendant is not entitled to a new trial on these grounds.

## VI.

For the foregoing reasons, we AFFIRM defendant's conviction.