NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0384n.06

No. 09-1051

**FILED**
**Jun 25, 2010**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| JOSEPH MAZE, | ) | |
| | ) | |
| Defendant–Appellant. | ) | OPINION |
| | ) | |
| _____ | ) | |

**Before:  CLAY and GILMAN, Circuit Judges; and ZATKOFF, District Judge.**\*

**RONALD LEE GILMAN, Circuit Judge.**  A jury found Joseph Maze guilty of possessing five grams or more of cocaine base (crack) with the intent to distribute the drug.  Maze appeals his conviction, arguing that the district court abused its discretion when it declined to admit (1) the first portion of an audiovisual recording of Maze's detention in a patrol car, and (2) an audio recording of a call that one of the arresting officers made to police dispatch concerning Maze's attempt to flee from the officers.  In addition, Maze contends that he did not receive a fair trial because one of the government's expert witnesses testified to matters that allegedly invaded the province of the jury. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

\* The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

### A.     Factual background

Two "community policing officers" with the Grand Rapids (Michigan) Police Department, Thomas Gootjes and James Wojczynski, were in their marked patrol car patrolling a high-crime area on June 21, 2007. They drove to the Wealthy Street Market, a local grocery store. The store had filed a "no-trespass letter" with the city attorney, meaning that the owner of the store had authorized the police to detain, question, and arrest people who were loitering on the store's property.

Officers Gootjes and Wojczynski observed Maze standing near an occupied, parked Cadillac in the parking lot of the Wealthy Street Market. These officers were familiar with Maze from prior contacts. Maze began walking away from the Cadillac when he saw the patrol car. The officers drove toward him. When Officer Gootjes asked Maze if he had purchased anything from the store, Maze responded that he had not. Officer Gootjes then stepped out of his patrol car to question Maze further, but Maze took off running, ignoring the officer's command to stop. As Maze was running, he held the waistband of his pants with his right hand. Officer Gootjes was concerned by this action because he thought that Maze might have a gun.

Although Officer Gootjes did not keep Maze within view at every moment of the chase (which spanned approximately two blocks), the officer remained about 15 to 20 feet behind Maze at all times. At one point during the pursuit, Officer Gootjes observed a clear plastic bag fall to the ground at Maze's feet. The officer made a mental note of where the bag landed and continued to pursue Maze.

When Officer Gootjes took off running after Maze, Officer Wojczynski remained in the patrol car. He called dispatch over the radio to inform other officers in the area that he and Officer Gootjes were involved in a foot pursuit and needed assistance. Although this call was recorded, the audio is barely intelligible.

Officer Wojczynski drove after Maze in an attempt to intercept him. Within a block or two, Officer Wojczynski saw Maze run across the street. Officer Wojczynski then exited his patrol car and pursued Maze, quickly catching up with Maze and forcing him to the ground. Within a few seconds, Officer Gootjes arrived and assisted in handcuffing Maze, who was struggling against both officers. Maze yelled "Let me go," and "I'm going to beat your ass Gootjes."

Once Maze was handcuffed, Officer Wojczynski began to retrace Maze's steps, backtracking the route that Maze had run. About 25 to 50 feet from the spot where Maze was taken down, Officer Wojczynski discovered a clear plastic bag. Officer Gootjes confirmed that this bag was found in the location where he had observed such a bag drop to the ground at Maze's feet. The bag contained five individually wrapped, marble-sized pieces of crack cocaine, weighing a total of 7.53 grams.

Several bystanders and other officers arrived at the scene after Maze was secured. Between the time that Maze ran through the area and the time that the clear plastic bag was recovered by Officer Wojczynski, however, no one had come near the location of the bag. The officers searched Maze's person. They did not find a weapon, but they did find a cell phone and a wad of $460 in cash. Specifically, there were five $20 bills, thirty-four $10 bills, and four $5 bills. In addition, the K-9 unit was called in to search the area for other drugs or a weapon, but nothing else was found.

Officer Jeremy Huffman was one of the police officers who arrived at the scene after Maze was arrested. Maze was placed in the backseat of Officer Huffman's patrol car. The car's audiovisual recording system was inadvertently turned off for approximately six minutes shortly after Officer Huffman arrived at the scene. It was later turned back on and was recording when Officer Gootjes gave Maze a *Miranda* warning and when Officer Huffman transported Maze to jail.

## B.      Trial testimony

Maze was charged with one count of possessing five grams or more of cocaine base with the intent to distribute the drug, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). His trial took place in the fall of 2007. Only those portions of the evidence that are relevant to the issues on appeal are discussed below.

Prior to trial, a dispute arose between Maze and his counsel about what portions of the recording from Officer Huffman's patrol car should be introduced into evidence. Neither the government nor Maze's trial counsel wanted the first part of the recording before the jury. This part reveals that Maze refused to make a statement to the officers about his actions that day once he was given a *Miranda* warning. It also shows that Maze was uncooperative and hostile to the officers, kicking at the car's side window and telling Officer Huffman, "Shut up, bitch." In addition, during this exchange, Maze demonstrated his familiarity with Officer Wojczynski by calling him Chip, the officer's nickname in the neighborhood.

Maze's counsel told the judge during a pretrial discussion that she thought this portion of the tape was prejudicial and did not want it played for the jury, but that Maze was "insistent that . . . that portion of the tape come in." The government also strongly opposed the admission of the first part

of the tape, suggesting that the introduction of evidence showing that Maze had invoked his right to remain silent could constitute plain error. Maze's counsel then asked the judge for a ruling concerning the admissibility of the disputed portion of the tape in order to resolve the conflict between counsel and Maze.

The district court ruled that the portion of the recording at issue had little, if any, probative value with regard to the main issue of whether the drugs discovered on the ground by Officer Wojczynski were in fact possessed by Maze. In contrast, the danger of unfair prejudice from this evidence was "intensely high" and "would tempt a jury to decide the case on factors that are extraneous to the actual factors in the case." The court therefore excluded the evidence, concluding that "even if there were minimal probative value, . . . the value is substantially outweighed by the potential for unfair prejudice." Maze's counsel was permitted, however, to question the arresting officers "regarding the six-minute gap in the tape and what may or may not have occurred during that point in time[.]"

In the portions of the recording introduced at trial, Maze told Officer Huffman that "I got somethin' for you," and asked the officer to come back to the neighborhood at night by himself. Officer Huffman perceived this to be a threat. Maze also indicated that "they didn't find what I was runnin' for" and that "there's somethin' better out there that I ran for." He reiterated that they had not yet found what he dropped, "[b]ut if they find it, hey that's what I, that's what I'll get charged with. That's what I'm pleading guilty to."

Officers Gootjes, Wojczynski, and Huffman all testified at Maze's trial. They discussed Maze's uncooperative behavior on that day and confirmed that they knew Maze from prior contacts.

In addition, the officers provided testimony showing that Maze was familiar with the officers, knew their names, and knew that Chip was the neighborhood nickname for Officer Wojczynski.

The admissibility of the recording of Officer Wojczynski's call to police dispatch was another issue discussed with the district judge at trial. Prior to the start of the trial, Maze's counsel alerted the court to the fact that the recording was not of very good quality. The government agreed, explaining that it doubted that the tape was admissible because the tape was largely unintelligible. But the government had no objection to its introduction.

Later at trial, during a sidebar, Maze's counsel informed the court that the defense was considering playing the dispatch tape for the jury, but needed to have Officer Wojczynski authenticate it. While the attorneys were speaking to the judge, Maze interjected: "That tape is fake." Maze's counsel explained that "Maze is maintaining that this is like a fake dispatch tape." Apparently Maze wanted the jury to hear the tape so that he could argue that the tape was not authentic. In response, the government verified the tape's authenticity, but again expressed concern about "whether it's going to be sufficiently audible for the jury to get anything out of it." The court then asked defense counsel whether there was going to be any evidentiary proffer to support Maze's contention that the tape was fake. Maze's counsel responded that "I have nothing definitive that I can bring forth to the Court showing and proving that."

Officer Wojczynski (along with Maze, counsel for both parties, and the judge) listened to both the digital copy and the original tape cassette recording outside of the presence of the jury. The officer testified that there was nothing he heard that would lead him to believe that the recording was not authentic. Following this testimony, the court excluded the recording from evidence for three

reasons: (1) the bulk of the tape was unintelligible, rendering "the recording as a whole . . . untrustworthy"; (2) the few sentences that were intelligible were "already a matter of record" and therefore would be cumulative; and (3) there was no evidentiary basis for Maze's argument that the tape was not authentic, and there was no probative value to admitting the tape simply to demonstrate its alleged lack of authenticity. Nevertheless, the court told Maze's counsel that "you can certainly cross-examine on the points that have already been [made] a matter [of] record and admission."

The last evidentiary matter relevant to the instant appeal is the expert testimony of government witness Sheila Goodell, who works for the Kalamazoo Department of Public Safety and is assigned to the U.S. Drug Enforcement Administration as a task officer. The district court accepted Officer Goodell as an expert in narcotics trafficking with no objection from the defense. Officer Goodell explained the typical habits of a drug dealer as distinguished from those of a drug user. When asked about what conclusion she would reach concerning a person apprehended with the exact same evidence that was discovered in Maze's case, Officer Goodell testified that she would conclude that such person was a drug dealer. No objection was made to Officer Goodell's testimony.

The defense presented no evidence at trial. Neither side objected to the jury instructions. During deliberations, the jury asked to review the audiovisual recording from Officer Huffman's patrol car, which was again played for them. The jury then returned a verdict of guilty on the sole count of the indictment. After Maze was sentenced to 240 months of imprisonment, he timely appealed.

## II. ANALYSIS

On appeal, Maze argues that the district court abused its discretion when it (1) declined to admit the first portion of the audiovisual recording from Officer Huffman's patrol car, and (2) excluded the dispatch tape from evidence. Maze also contends that the court committed plain error, in violation of Maze's right to a fair trial, when it permitted Officer Goodell to testify as an expert witness concerning matters that allegedly invaded the province of the jury. The government responds that the court did not abuse its discretion or commit any plain error and, in any event, that any errors made by the court were harmless.

### A. Excluded evidence

We review a district court's admission or exclusion of evidence—to which a proper objection was made at trial—utilizing the abuse-of-discretion standard. *United States v. Newsom*, 452 F.3d 593, 601 (6th Cir. 2006). Under this standard, "we will leave rulings about admissibility undisturbed unless we are left with the definite and firm conviction that the district court committed a clear error in judgment." *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005) (brackets, ellipses, and citation omitted). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006) (citation omitted). "A new trial is not required unless the error affects substantial rights." *Id.*

In the present case, the district court excluded the contested evidence under Rule 403 of the Federal Rules of Evidence. This Rule provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) (citation and internal quotation marks omitted).

In reviewing a district court's decision to exclude evidence under Rule 403, we "view[] the excluded evidence in the light most favorable to the proponent." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 831-32 (6th Cir. 2000). Balancing under Rule 403 is "highly discretionary" and, therefore, "the district court's decision is afforded great deference." *United States v. Bell*, 516 F.3d 432, 445 (6th Cir. 2008). Thus, "a decision will not be disturbed if substantial injustice did not result." *Kovacevich*, 224 F.3d at 832.

Maze contends that the district court abused its discretion when it excluded the first portion of the recording from Officer Huffman's patrol car, in which Maze invokes his right to remain silent and demonstrates hostility toward the officers at the scene. He argues that this evidence would have cast reasonable doubt on the government's evidence that the clear plastic bag found on the ground by Officer Wojczynski belonged to Maze. And he asserts that the jury had no choice but to infer a guilty conscience from the evidence that Maze ran from the police. If the tape recording had been introduced, however, Maze argues that the jury would have seen that Maze had a preexisting antagonistic and untrusting attitude toward the police generally and his arresting officers specifically. According to Maze, "[t]his evidence would have bolstered other evidence that [Maze] had made veiled or explicit threatening statements to the police during the incident."

We are frankly puzzled as to why Maze believes that this excluded evidence would have aided his defense. But even viewing the excluded evidence in the light most favorable to Maze and assuming that it would have demonstrated, as Maze asserts on appeal, that he was generally antagonistic toward the police, there is no reasonable likelihood that the jury would have reached the conclusion that his behavior was explained by a distrust of these officers rather than by his guilt. The need for this particular evidence was also minimal given that the police officers who were recorded on the disputed portion of the tape testified at trial and could have been cross-examined about Maze's relationship with the police and his general antagonism. On the other hand, the danger was high that the jury would draw an unfairly prejudicial inference about Maze's guilt based on his generally unpleasant nature and his invocation of the right to remain silent. The district court therefore did not abuse its discretion in refusing to admit this evidence.

Maze further contends that the tape revealed that other people were at the scene, which allegedly contradicts the police officers' testimony that no one else was present. In particular, he refers to the recorded statement of someone named "Bargas," who says: "Oh, Lord have mercy. The dope—" Maze argues that "the presence of another person in the area who specifically talks about 'dope' gives the jury an additional reason to question whether the government had linked the baggie retrieved by the second officer to [Maze] beyond a reasonable doubt."

Maze's arguments, however, misstate the record. Officers Gootjes and Wojczynski never said that they were the only ones present at the scene after Maze was arrested. In fact, they testified that other observers and officers arrived once Maze was in custody. The evidence on the excluded

portion of the recording, which establishes that others were present at the scene once Maze was secured in Officer Huffman's patrol car, is not in any way inconsistent with this testimony.

Regarding the statement by "Bargas," the transcript of the recording identifies Bargas by name (as opposed to an earlier statement by "Unknown"), which suggests that Bargas is a member of law enforcement. This was confirmed by Officer Wojczynski's trial testimony. When he was asked if anyone took photographs of the scene, Officer Wojczynski responded: "I believe Sergeant Bargas was called, but I don't know what types of photographs he may have taken or if he—what reason he was on scene." Maze's argument on this point is therefore without merit.

He next argues that the district court erred in excluding from evidence the recording of Officer Wojczynski's call to police dispatch. Maze contends that authenticity was not an issue because the government vouched for the tape and, "[although] there were some audibility issues, there is nothing factual in the record that indicates that the tape was so inaudible that it could not be understood by the jury." Again, however, Maze misstates the record. The district judge played the digital copy of the recording as well as the original tape cassette for the record, outside of the jury's presence. After hearing these played, the court concluded, pursuant to *United States v. Scarborough*, 43 F.3d 1021 (6th Cir. 1994), that "on the whole, it's unintelligible to me." *See id.* at 1024 (explaining that the admission of an audio recording constitutes an abuse of discretion "where the unintelligible portions of a tape recording are so substantial that the recording as a whole is rendered untrustworthy" (citation and internal quotation marks omitted)). The court also remarked that the information contained in those few portions of the recording that were intelligible were already matters of record. Neither party has provided us with a copy of this recording.

-11-

Maze does not identify what specific statements in this recording should have been admitted. Nor does he challenge the district court's finding that the introduction of these statements would have been cumulative of evidence already in the record. Rather, Maze argues that "the tape completed the story of the chase for the jury." We find this argument unavailing, and conclude that the district court did not abuse its discretion when it excluded the dispatch-call recording from evidence.

**B.      Expert testimony**

Maze's final argument, raised for the first time on appeal, challenges certain expert testimony admitted at his trial. Because no timely objection was made to the introduction of this evidence, we review its admission under the plain-error standard. *See United States v. Stephens*, 549 F.3d 459, 464 (6th Cir. 2008); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). To obtain relief under this standard, a defendant must demonstrate "an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Olano*, 507 U.S. 725, 732 (1993) (brackets in original) (quoting Fed. R. Crim. P. 52(b)).

Maze contends that Officer Goodell invaded the province of the jury when she "testified about six separate facts [that] were unique to [Maze's] case." He listed these facts as follows:

A.      7.53 grams of crack cocaine would be indicative of drug distribution. This happened to be the exact amount of drugs found by the police;

B.      It would be common for a crack dealer to have $5 and $10 bills in his possession. The wad of money seized from [Maze] contained mostly $5 and $10 bills;

C.      $460 would be a common amount of money for a drug trafficker to have in his possession. This happened to be the exact amount of money found on [Maze] when he was searched;

D.      A user would not be carrying five different baggies of crack cocaine. This also happened to be the exact number of baggies which were found by the police;

E.      It is common for drug dealers to run from the police. [Maze] ran and was chased by the police after one officer spoke to him in the parking lot; and

F.      It is common for drug dealers to get rid of firearms while running. [Maze] had made a statement about having something better that the police did not find. There was testimony that there was concern about whether [Maze] might have a firearm because of the placement of his hands while running. There was also testimony that because the chase took place in a neighborhood, [Maze] was not in the sight of the pursuing officers at all times. Thus, the expert decided for the jury the question of whether [Maze] had discarded a firearm during flight. Given the relative paucity of evidence on this subject, the jury could have easily reached a different conclusion in the absence of the expert's testimony.

Maze contends that "each of the six issues were fact issues for the jury to decide." Although recognizing that "qualified law enforcement officers can testify about characteristics of the drug trade," Maze argues "that a line should be drawn to prevent that expert testimony from invading the province of the jury." He asserts that "the issue is a question of degree and specificity." Maze "submits that [the caselaw] makes it clear that this Court could some day be presented with a set of facts where the expert witness went too far. . . . [Maze] respectfully submits that this case presented those facts."

Rule 704 of the Federal Rules of Evidence governs the permissible scope of an expert's testimony. This rule provides:

> (a)     Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
>
> (b)     No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.  Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704.

Significantly, Maze does not argue that Officer Goodell testified that Maze had "the mental state or condition constituting an element of the crime charged or of a defense thereto." *See id.* at 704(b).  He instead asserts that Officer Goodell's testimony was "equivalent to identity testimony," thus unfairly bolstering the government's contention that the baggie found on the ground was in fact possessed by Maze and constitutes evidence of drug dealing.  This argument, however, is foreclosed by the express language of Rule 704(a), cited above.  Moreover, ample caselaw recognizes the propriety of expert testimony concerning "conduct that would be consistent with an intent to distribute" drugs.  *See, e.g.*, *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004).  So long as an expert "d[oes] not actually testify regarding the intent *of the defendant* to distribute drugs," a trial court "d[oes] not err in permitting this testimony."  *Id.* (emphasis added).

Maze does not cite Rule 704(b) as the basis for his argument.  Nor does he cite any case holding that an expert witness's description of conduct as being generally consistent with drug distribution crossed the line into impermissible testimony.  Accordingly, Maze has not shown that Officer Goodell's testimony so obviously exceeded the bounds of permissible expert testimony that its admission constituted plain error.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.